UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:21-CV-00187-GNS-LLK

EDWARD JOHNSON                                                                    PLAINTIFF

v.

BRIAN SMITH et al.                                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 40) and Plaintiff's Motion for Leave to File Excess Pages (DN 49).[1]   The motions are ripe for adjudication.  For the reasons discussed below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's motion is **GRANTED**.

## I.       BACKGROUND

Plaintiff Edward Johnson ("Johnson") called 911 to report that nonparty James Forte ("Forte") was being "belligerent" outside the motel where Johnson was staying with his niece Chaquita Johnson ("Chaquita").  (*See* Defs.' Mot. Summ. J. Ex. 1, at 1-2, DN 40-2).  Defendant Edward Eastman ("Eastman"), a Hopkinsville Police Department ("HPD") officer, arrived at the hotel a day later and arrested Forte because of an active warrant for his arrest.  (Eastman Video 22:14:06-22:16:30, DN 41).   While arresting Forte, Chaquita had multiple exchanges with Eastman, who eventually informed her that she would be arrested for disorderly conduct if she did not return to her motel room and remain there.  (Eastman Video 22:14:06-22:16:00).  Soon after, Defendants Brian Smith ("Smith") and Josh Stallons ("Stallons"), two other HPD officers, arrived on scene.  (Stallons Video, DN 41; Smith Video, DN 41).  Chaquita again began speaking to the

---

[1] Because the relief requested in Plaintiff's motion is reasonable and because Defendants did not respond, Plaintiff's motion is granted.

officers about a key that Forte had and was again warned that she would be arrested if she "[came] outside screaming again . . . ."  (Stallons Video 22:16:30-22:16:55).  Stallons retrieved the key from Forte, walked to the motel room, and gave the key to Johnson.  (Stallons Video 22:16:55-22:18:05).  At that time, Stallons advised Johnson, "Yeah you might want to shut the door before she goes with him[,]" to which Johnson responded, "Alright."  (Stallons Video 22:18:00-22:18:12).  Johnson closed the door.  (Stallons Video 22:18:10-22:18:30).

Stallons and Eastman arrested Forte, placed him into a police car, and began a search of Forte's vehicle.  (Stallons Video 22:18:30-22:20:30; Eastman Video 22:18:30-22:20:30).  During that time, Smith stood outside of Johnson's motel room.  (Smith Video 22:19:15-22:19:45).  When Chaquita emerged again, Smith instructed her to go back inside and closed the door.  (Smith Video 22:20:35-22:20:50).  Chaquita and Johnson could be heard arguing behind the closed door, and then Johnson opened the door.  (Smith Video 22:20:50-22:21:12).

Johnson stood in the threshold of his motel room and asked Smith for his badge number, which Smith provided before instructing Johnson to go back inside.  (Smith Video 22:21:12-22:21:17).  Johnson continued standing in the doorway and told Smith, "You need to chill out." (Smith Video 22:21:17-22:21:20).  Smith instructed Johnson to step back inside again or go to jail. (Smith Video 22:21:20-22:21:27).  Johnson continued standing in the threshold, and Smith grabbed Johnson by his arm and pulled him out of the doorway.  (Smith Video 22:21:20-22:21:27). Stallons arrived and assisted Smith with placing Johnson in handcuffs.  (Smith Video 22:21:27-22:21:30).  During the arrest, Johnson fell to the ground and Stallons placed his knee on Johnson's back while he and Smith put Johnson in handcuffs.  (Smith Video 22:21:30-22:22:00).  At the same time, Eastman passed by the arrest and walked into the motel room to attempt to control the other occupants.  (Eastman Video 22:21:30-22:21:54).  Johnson was placed under arrest and taken

to the emergency room due to complaints of knee pain.  (*See* Defs.' Mot. Summ. J. Ex. 7, at 1-3, DN 40-8).  Johnson was charged with obstructing governmental operations in violation of KRS 519.020, which was later dismissed due to lack of evidence.  (*See* Defs.' Mot. Summ. J. Ex. 9, DN 40-10; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 5, at 1, DN 50-6).

Johnson initiated this lawsuit, asserting claims against Smith in his individual capacity for: (1) violations of his Fourth, Fifth, and Fourteenth Amendment rights; (2) assault and malicious prosecution; and (3) libel.  (Compl. ¶¶ 9-20).  Johnson brings claims against Stallons for:  (1) violations of his Fourth, Fifth, and Fourteenth Amendment rights; and (2) Assault.  (Compl. ¶¶ 21-27).  Johnson brings claims against Eastman for violation of his Fourth, Fifth, and Fourteenth Amendment rights.  (Compl. ¶¶ 28-31).

## II.    JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because a federal question is presented.  The Court has supplemental subject matter jurisdiction over Plaintiff's state law claims arising from the same case or controversy pursuant to 28 U.S.C. § 1367(a).

## III.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Thereafter, the burden shifts to the nonmoving party to present specific facts indicating a genuine issue of a disputed material fact essential to the case, beyond "some metaphysical doubt."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The nonmoving party must present facts demonstrating a material factual

dispute that must be presented to "a jury or judge to resolve the parties' differing versions of the truth at trial[;]" the evidence, however, is "not required to be resolved conclusively in favor of the party asserting its existence . . . ." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968). When considering the evidence, the Court must view it in the light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). If the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, the motion should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## IV.   DISCUSSION

Defendants seek summary judgment on all of Johnson's claims. (Defs.' Mem. Supp. Mot. Summ. J. 1, DN 40-1 [hereinafter Defs.' Mem.]). Johnson concedes Defendants' motion as to his federal claims to the extent they are based on violations of his Fifth Amendment rights and his state law claims for abuse of process[2], libel, and for certain medical expenses.[3] (Pl.'s Mem. Supp. Resp. Defs.' Mot. Summ. J. 18, 22-23, DN 50-1 [hereinafter Pl.'s Resp.]).

### A.   Federal Claims

Defendants argue that Johnson cannot prove a violation of his Fourth Amendment rights, and that, even if he can, Defendants are entitled to qualified immunity because the right was not clearly established.[4] (*See* Defs.' Mem. 20-22).

---

[2] This claim is included within Johnsons' broader claim for assault and malicious prosecution against Smith. (Compl. ¶ 14).

[3] Defendants also assert that they are entitled to summary judgment on Johnson's claims under the Fourteenth Amendment because they are duplicative of his claims under the Fourth Amendment. (Defs.' Mem. 19-20). Johnson responds that he is only bringing his federal claims under the Fourteenth Amendment because the Fourteenth Amendment incorporates the Fourth Amendment against the states. (Pl.'s Resp. 18); *see generally Mapp v. Ohio*, 367 U.S. 643, 646-54 (1961). Based on Johnson's representations, the Court is satisfied that there are no duplicative claims.

[4] Johnson brings his federal claims against each Defendant under a single count labeled "Constitutional Violations" and does not specify any theories of liability under the Fourth Amendment. (*See* Compl. ¶¶ 9-11, 21-24, 28-31). As a result, Defendants "address the multiple

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Ward v. Borders*, No. 3:16-CV-393-RGJ-RSE, 2023 WL 5108598, at *6 (W.D. Ky. Aug. 9, 2023) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). "It 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity shields federal and state official from liability unless a plaintiff shows both "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 275 (6th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "A right is clearly established for purposes of overcoming the qualified immunity defense only when 'existing precedent [has] placed the statutory or constitutional question beyond debate . . . .'" *Id.* (alteration in original) (quoting *al-Kidd*, 563 U.S. at 741). "Thus, an official 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Id.* (quoting *Kisela v. Hughes*, 584 U.S. 100, 105 (2018)). "The 'salient question' in determining if a defendant is entitled to qualified immunity is whether she had 'fair warning' that her conduct was unconstitutional." *Id.* at 276 (quoting *Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019)).

"The plaintiff bears the ultimate burden of proof in establishing that a defendant has no right to qualified immunity." *Ward*, 2023 WL 5108598, at *6 (citing *Gardenhire v. Schubert*, 205

---

theories of liability for Fourth Amendment violations separately as they may be applicable" to the facts underlying Johnson's claims and argue that they are entitled to summary judgment under a theory of excessive force, false arrest, and failure to intervene. (Defs.' Mem. 8). Johnson does not address whether these are the only theories he intended to pursue at trial.

F.3d 303, 311 (6th Cir. 2000)).   A defendant must first argue facts that they acted within their discretionary authority.  *See Hartman v. Thompson*, No. 3:16-CV-00114-GNS-DW, 2018 WL 793440, at *7 (W.D. Ky. Feb. 7, 2018) (citing *Gardenhire*, 205 F.3d at 311).  If a defendant succeeds, "the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct."  *Id.* (quoting *Gardenhire*, 205 F.3d at 311).  To do so, a plaintiff need not identify an earlier decision that is "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 741).  The Sixth Circuit has also recognized that a right may be clearly established even without existing precedent where a violation was "sufficiently 'obvious' under the general standards of constitutional care . . . ."  *Hum. Rts. Def. Ctr. v. Winn*, 431 F. Supp. 3d 925, 934-35 (E.D. Mich. 2020) (quoting *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005)).

  1.    ***Excessive Force***

    a.    **Constitutional Violation**

Defendants assert that Smith and Stallons are entitled to a dismissal of Johnson's constitutional claims to the extent they are based on a theory of excessive force.[5]  (Defs.' Mem. 8,

---

[5] Defendants also argue that Eastman is entitled to summary judgment under a theory of excessive force because he did not use any force against Johnson and instead argues that Johnson's Fourth Amendment claim against Eastman fails under a theory of failure to intervene.  (Defs.' Mem. 12, 17-19).  Johnson does not respond to this argument, so summary judgment is granted to Eastman as to any assertion of direct excessive force.  *See Scott v. Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." (citation omitted)); *Degolia v. Kenton Cnty.*, 381 F. Supp. 3d 740, 759-60 (E.D. Ky. 2019) ("As a practical matter, 'it is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those

10).  Force is not per se excessive when used to make a false arrest.  *Gray v. Shelby Cnty.*, Nos. 22-5542/5543/5544, 2023 WL 5237373, at *6 (6th Cir. Aug. 15, 2023) (citations omitted).  "[A]n excessive force claim . . . relat[es] to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest."  *Id.* (second alteration in original) (quoting *Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1331 (11th Cir. 2006)).

"Fourth Amendment excessive-force claims are analyzed under an objective-reasonableness standard, which depends on the facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene." *Tucker v. Ky. State Police Post #4*, No. 3:23-CV-P328-JHM, 2023 WL 6929815, at *3 (W.D. Ky. Oct. 19, 2023) (citing *Graham v. Connor*, 490 U.S. 386, 395-96 (1989)).  "In deciding whether the force used was excessive, we balance the government's interests in protecting others (including the police) and curbing crime against a suspect's right to not be injured." *Puskas v. Delaware Cnty.*, 56 F.4th 1088, 1093-94 (6th Cir. 2023) (citing *Gambrel v. Knox Cnty.*, 25 F.4th 391, 400 (6th Cir. 2022)).  "Three factors are particularly relevant:  (1) 'the severity of the crime at issue,' (2) 'whether the suspect pose[d] an immediate threat to the safety of the officers or others,' and (3) 'whether he [wa]s actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (alterations in original) (quoting *Graham*, 490 U.S. at 396).  In considering these factors, the Court must "identify the 'seizure' at issue [] and then examine 'whether the force used to effect that seizure was reasonable in the totality of the circumstances, not whether it was reasonable for the police to create the circumstances.'" *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 406 (6th Cir. 2007) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996)).

---

arguments that the plaintiff failed to address as conceded.'"  (alteration in original) (quoting *Rouse v. Caruso*, No. 06-CV-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011))).

In the Complaint, Johnson claims that Smith "forcefully threw [Johnson] to the ground" and that Stallons "helped" Smith and "placed his knee in [Johnson]'s back." (Compl. ¶¶ 9, 22). Each Defendant's conduct must be analyzed separately. *Smith v. City of Troy*, 874 F.3d 938, 944 (6th Cir. 2017) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009)).

### i.      Smith

Johnson claims that Smith used excessive force by throwing Johnson to the ground without justification. (Compl. ¶ 9). Defendants argue that Smith's actions were objectively reasonable in light of the facts and circumstances confronting them. (Defs.' Reply Mot. Summ. J. 1, DN 53 [hereinafter Defs.' Reply]). The parties largely agree on the actual sequence of events but characterize them differently. Johnson describes his overall demeanor when communicating with the officers as unthreatening. (*See* Pl.'s Resp. 6). Defendants focus on the things that Smith did not know about Johnson at the time of the arrest. (*See* Defs.' Mem. 10-12).

With respect to the actual use of force, Smith testified that he did not intend to bring Johnson to the ground but that he and Johnson became entangled and fell to the ground. (*See* Smith Dep. 60:2-6, Aug. 19, 2022, DN 40-3). Johnson characterizes the use of force as him being "thrown to the ground." (Pl.'s Resp. 6). None of the body camera videos shows clearly whether Johnson was thrown to the ground or merely fell. (*See* Smith Video 22:21:27-22:21:37; Stallons Video 22:21:27-22:21:37; Eastman Video 22:21:27-22:21:37). Viewing this ambiguity in the light most favorable to Johnson, a reasonable jury could find that Smith threw Johnson to the ground. Accordingly, the Court must apply the *Graham* factors and determine if such force was reasonable given the circumstances.

Courts may consider a number of factors to evaluate the severity of the crime at issue such as the classification of the offense, whether there was any "connotation of violence" by the

plaintiff, the reason the police were called to the scene, and public safety concerns. *See Shumate v. City of Adrian*, 44 F.4th 427, 440-42 (6th Cir. 2022) (citations omitted). Defendants state that Johnson's crime was interfering with a drug investigation and Johnson was cited with "obstructing governmental operations." (Defs.' Mem. 11; Defs.' Mot. Summ. J. Ex. 5, DN 40-6). "Obstructing governmental operations" is a misdemeanor, and Defendants admit that this is not a significant charge. KRS 519.020; (*see* Defs.' Reply 2). KRS 519.020 provides:

> (1)    A person is guilty of obstructing governmental operations when he intentionally obstructs, impairs or hinders the performance of a governmental function by using or threatening to use violence, force or physical interference.
> (2)    This section shall not apply to:
>     (a)    Any means of avoiding compliance with the law without affirmative interference with governmental functions; or
>     (b)    The obstruction, impairment or hindrance of unlawful action by a public servant; or
>     (c)    The obstruction, impairment or hindrance of an arrest.
> (3)    Obstructing governmental operations is a Class A misdemeanor.

KRS 519.020.

Johnson disputes that he actually committed this crime. (*See* Pl.'s Resp. 10-11). As explained below, Defendants have failed to establish that Smith had probable cause to arrest Johnson, who claims he was not threatening to use violence and that instead he was simply standing in the door to his hotel room and speaking with Smith. (Pl.'s Resp. 4, 11-12). Reviewing the video in the light most favorable to Johnson, a reasonable jury could find that there was no "connotation of violence." *Shumate*, 44 F.4th at 441 (citing *LaPlante v. City of Battle Creek*, 30 F.4th 572, 580 (6th Cir. 2022)); (*see* Smith Video 22:21:11-22:21:27). Defendants identify no reason for them to suspect that Johnson had committed a crime when they arrived, as Johnson had been the one who called 911 in the first place. (*See* Defs.' Mot. Summ. J. Ex. 1, at 1-2). Finally, by the time Johnson interacted with Defendants, Forte was already in custody, so there was

minimal, if any, public safety concern. (*See* Smith Dep. 36:9-12). Therefore, the first *Graham* factor weighs in Johnsons' favor.

Turning to the second factor, Defendants contend that it was reasonable for Smith to conclude that Johnson posed a threat to him. (*See* Defs.' Mem. 10-12). First, Defendants assert that Smith heard Johnson state "I will take care of this right now"[6] prior to opening his hotel room door, which phrase "often times entails violence when spoken in a hostile context." (Smith Dep. 20:23-25; Defs.' Mem. 11-12). Next, Defendants point to Chaquita's repeated refusal to stay inside the motel room and keep the motel door closed. (Defs.' Mem. 12). Defendants also point out that there was an unknown number of people in Johnson's motel room and that they could not know if there were weapons inside. (Defs.' Mem. 10).

The footage from Smith's body camera shows that when Johnson opened the door, he did not leave the threshold of his room until Smith pulled him out approximately fifteen seconds later. (Smith Video 22:21:11-22:21:27). During that time, Johnson asked Smith for his badge number, which Smith provided and instructed Johnson to go back inside. (Smith Video 22:21:11-22:21:17). Johnson stayed in the doorway and remarked, "You need to chill out." (Smith Video 22:21:18-22:21:22). Smith again told Johnson to go back inside and warned, "I'm not gonna ask you again. It's either step back inside or go to jail." (Smith Video 22:21:23-22:21:24). Johnson remained in the doorway and said, "Look sir, I am", at which point Smith grabbed Johnson's arm and pulled him out of the motel room. (Smith Video 22:21:25-22:21:29). Stallons then grabbed Johnson's other arm, and Johnson ended up on the ground. (Stallons Video 22:21:27-22:21:36). Though

---

[6] Smith testified first that Johnson said, "I will take care of this right now" and then testified later that Johnson said, "I'm going to go take care of this right now." (Smith Dep. 20:23-21:16). In their motion, Defendants state that Johnson said, "I will take care of it." (Defs.' Mem. 11-12). These minor discrepancies are not material to the Court's analysis.

Defendants characterize the events differently, a reasonable jury viewing the body camera footage could find that Johnson never posed a threat to Defendants. *See, e.g.*, *Lawler v. City of Taylor*, 268 F. App'x 384, 387 (6th Cir. 2008) ("Though Toro disputes some of Lawler's account, the video of the altercation would permit a jury to conclude that Lawler never posed a threat to Toro . . . ." (citing *Scott v. Harris*, 550 U.S. 372, 387 (2007))). Accordingly, this factor weighs in favor of Johnson.

With respect to the third *Graham* factor, Defendants assert that Johnson resisted arrest by resisting Smith's commands. (Defs.' Mem. 12). Defendants focus mainly on the time period after Johnson was pulled from the motel room and onto the ground, claiming that Johnson actively resisted the handcuffing. (Defs.' Mem. 12). Prior to the initial use of force, however, a reasonable jury watching the video could conclude that Johnson was not resisting Smith, and that Johnson was not under arrest. Accordingly, this factor weighs in Johnson's favor as well.

Viewing the evidence in the light most favorable to Johnson, a reasonable jury could conclude that Smith used excessive force. Therefore, a genuine issue of material fact exists as to whether Smith violated Johnson's constitutional rights under a theory of excessive force.

## ii.    Stallons

Johnson asserts that Stallons used excessive force when he "forcefully helped throw [Johnson] to the ground[] [and] placed his knee in [Johnson]'s back . . . ." (Compl. ¶ 22). Application of the *Graham* factors to Stallons mirrors the application to Smith, and for the same reasons, with respect to the initial use of force that resulted in Johnson falling onto the ground, a reasonable jury could conclude that Stallons used excessive force.

With respect to Stallons placing his knee on Johnson's back after Johnson had fallen to the ground, the analysis of the first two *Graham* factors does not change. With respect to the third,

however, Defendants claim that once Johnson was "confronted with the reality of arrest" he actively resisted.  (Defs.' Mem. 12).

Active resistance to arrest includes "physically struggling with, threatening, or disobeying officers."  *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (quoting *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012)).  It also includes "refusing to move your hands for the police to handcuff you, at least if that inaction is coupled with other acts of defiance."  *Id.* (citing *Caie v. W. Bloomfield Twp.*, 485 F. App'x 92, 94, 96-97 (6th Cir. 2012)).

Defendants cite *Rudlaff* as controlling authority, where the Sixth Circuit determined that the arrestee actively resisted arrest, becoming verbally defiant, "puffed his chest and stared down" the officer, "twice swung his arms in the officer's direction," and then balled up and refused to produce his hands for handcuffing.  *Id.* at 642; (Defs.' Reply 3).

The video of Johnson's arrest shows that Johnson engaged in almost none of this behavior. Roughly eight seconds passed from the time that Smith grabbed Johnson's wrist to the time Johnson was face down on the ground.  (Smith Video 22:21:27-22:21:35).  Smith and Stallons began handcuffing Johnson a few seconds later and completed the handcuffing roughly eighteen seconds after that.  (Smith Video 22:21-35-22:22:00).  All in all, only around half a minute passed from the time Smith initially grabbed Johnson to when Johnson was handcuffed.  (Smith Video 22:21:27-22:22:00).  During this time, Johnson objected to the sudden seizure and exclaimed that he was in pain but made no comments that were overtly threatening.  (Smith Video 22:21:27-22:22:00).  Smith and Stallons were able to quickly gain control of Johnson's arms.  (Stallons Video 22:21:35-22:21:44).

*Stanfield v. City of Lima*, 727 F. App'x 841 (6th Cir. 2018), bears a closer resemblance to the facts as presented by the body camera videos.  *Id.* at 847.  In *Stanfield*, the plaintiff testified

that he was not resisting and that any delay in producing his hands for handcuffing was because the officers were "kneeing him repeatedly and kneeling or laying on him." *Id.* The court concluded that, accepting the arrestee's testimony, it would not be reasonable for an officer on the scene to determine that the arrestee was actively resisting. *Id.* at 847-48.

Viewing the body camera videos in the light most favorable to Johnson, a reasonable jury could conclude that he was not resisting arrest and that therefore Stallons used excessive force by kneeling on Johnson's back.

### b.      Clearly Established

The genuine issue of material fact about whether Johnson posed a threat to Smith and Stallons precludes summary judgment on whether Smith and Stallons violated a clearly established right. The circumstances of this case, viewed in the light most favorable to Johnson, present a situation anticipated by the Sixth Circuit in *Lyons* where the violation is sufficiently obvious that no existing precedent is required to show that the right is clearly established. *See Lyons*, 417 F.3d at 579 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). A reasonable officer in Smith and Stallons' position would know that he should not seize and throw to the ground an individual who has not committed a crime or displayed threatening behavior. *Cf. Harris v. Langley*, 647 F. App'x 585, 590 (6th Cir. 2016) ("Here, there is no opacity in the Fourth Amendment's prohibition on unprovoked body slams from police officers, whether this exact scenario has been held unlawful in a previous decision or not.").

With respect to Stallons' knee in Johnson's back, prior precedent has recognized that individuals have a clearly established right "to be free from being forcibly kneed in the back while not actively resisting arrest and lying on his stomach on the ground not resisting arrest." *Sanders v. City of Pembroke*, No. 5:19-CV-23-TBR, 2020 WL 4572360, at *9 (W.D. Ky. Aug. 7, 2020)

13

(quoting *Sweatt v. Doxtader*, 986, F. Supp. 2d 886, 898 (E.D. Mich. 2013)); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) ("It [is] also clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force."). Therefore, the genuine issue of fact as to whether Johnson was resisting arrest after he fell to the ground precludes summary judgment on qualified immunity.

Accordingly, Smith and Stallons are not entitled to summary judgment on Johnson's Fourth Amendment claim to the extent it is based on a theory of excessive force.

### 2.    *Unlawful Arrest*

The Fourth Amendment prohibits warrantless arrest unless an officer has probable cause to believe that a criminal offense has been or is being committed. *See Hadden v. Wathen*, No. 1:16-CV-00140-GNS-HBB, 2018 WL 4222882, at *8 (W.D. Ky. Sept. 5, 2018) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "For probable cause to arrest to exist, the facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Johnson v. Ky.-Cnty. of Butler*, No. 1:12-CV-37-JHM, 2014 WL 4129497, at *6 (W.D. Ky. Aug. 18, 2014) (alteration in original) (quoting *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003)). Probable cause is a "mixed question of fact and law . . . ." *Gerics v. Trevino*, 974 F.3d 798, 804 (6th Cir. 2020) (citation omitted). "The constitutional right to 'freedom from arrest in the absence of probable cause' is clearly established within our circuit.'" *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016) (quoting *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015)).

Defendants argue that Smith had probable cause to arrest Johnson for:  (1) second degree disorderly conduct; (2) resisting arrest;[7] and (3) obstructing government operations.  (Defs.' Mem. 14).

### a.      Disorderly Conduct

KRS 525.060 provides:

(1)      A person is guilty of disorderly conduct in the second degree when in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he:
>      (a)      Engages in fighting or in violent, tumultuous, or threatening behavior;
>      (b)      Makes unreasonable noise;
>      (c)      Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard, or other emergency; or
>      (d)      Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.

(2)      Disorderly conduct in the second degree is a Class B misdemeanor.

KRS 525.060.  Importantly, as the Sixth Circuit has observed:

[T]he statute requires public alarm as distinguished from private alarm.  For example, *a person may not be arrested for disorderly conduct as a result of activity which annoys only the police*.  The statute is not intended to cover the situation in which a private citizen engages in argument with the police so long as the argument proceeds without offensively coarse language or conduct which intentionally or wantonly creates a risk of public disturbance.

*Kennedy v. City of Villa Hills*, 635 F.3d 210, 215 (6th Cir. 2011) (quoting KRS 525.060 cmt.).

Here, Johnson was standing in the threshold of his motel room when he interacted with Smith.  (Smith Video 22:21:11-22:21:30).  He spoke in a calm manner and did not raise his voice until Smith seized him.  (Smith Video 22:21:11-22:21:30).  Other than a broad reference to the "totality of circumstances," Defendants have cited no authority supporting the notion that

---

[7] Defendants do not address whether Smith had probable cause based on this alleged violation, as it which would be secondary to whether Smith had probable cause to arrest Johnson in the first place.  (Defs.' Mem. 14 n.6).

Defendants' separate interaction with Chaquita could support a finding that Smith had probable cause to arrest Johnson for disorderly conduct.  (*See* Defs.' Mem. 16 n.8).  While Defendants had previously interacted with Chaquita, who was certainly more boisterous than Johnson, and ordered her to return to the room, Smith had not interacted with Johnson until he appeared in the doorway moments before he was pulled out of the room.  (Smith Video 22:20:30-22:21:30).

Viewing the body camera video in the light most favorable to Johnson, the interaction between Johnson and Smith could be fairly described as a "situation in which a private citizen engage[d] in argument with the police . . . without offensively course language or conduct which intentionally or wantonly create[d] a risk of public disturbance."  *Kennedy*, 635 F.3d at 215 (footnote omitted) (quoting KRS 525.060 cmt.).  Therefore, Defendants have failed to establish that a prudent person in Smith's position would believe that Johnson was creating or going to create a public alarm or disturbance in violation of KRS 525.060.

### b.    Obstructing Government Operations

KRS 519.020 provides:

(1)    A person is guilty of obstructing governmental operations when he intentionally obstructs, impairs or hinders the performance of a governmental function by using or threatening to use violence, force or physical interference.
(2)    This section shall not apply to:
    (a)    Any means of avoiding compliance with the law without affirmative interference with governmental functions; or
    (b)    The obstruction, impairment or hindrance of unlawful action by a public servant; or
    (c)    The obstruction, impairment or hindrance of an arrest.
(3)    Obstructing governmental operations is a Class A misdemeanor.

KRS 519.020.  Defendants assert that the relevant government operation was the search of Forte's vehicle and argue that Johnson's refusal to follow instructions in addition to his statement, "I will take care of this right now," "constitute[d] a threat of physical interference with a government operation vehicle."  (Defs.' Mem. 14-15).

Defendants cite *Estep v. Combs*, 467 F. Supp. 3d 476 (E.D. Ky. 2020), to support the notion that "verbal threats" are sufficient to establish probable cause for obstructing or interfering. (Defs.' Mem. 15). In *Estep*, a sister court found probable cause after describing an encounter between the arrestee and officer as follows:

> The video, here, depicts Estep issuing profanity-laced demands for Combs to depart the scene of an investigation. Plaintiff's demeanor and posture are undoubtedly quite antagonistic; his words (considering both volume and content) and conduct are unquestionably disruptive. When Combs advised Estep to back-off, Estep challenged: "Put me out of your face." Estep's interjection plainly halted Combs's taxidermy investigation in its tracks.

*Estep*, 467 F. Supp. 3d at 494 (internal footnote omitted).

None of the conduct described in *Estep* is shown in the body camera footage of Johnson's arrest. Before Johnson opened his door, Smith was standing next to the doorway while Stallons and Eastman searched Forte's vehicle. (Smith Video 22:20:40-22:21:11; Stallons Video 22:21:00-22:21:30; Eastman Video 22:21:00-22:21:30). Stallons and Eastman only stopped their search once the interaction between Johnson and Smith escalated. (Smith Video 22:20:40-22:21:11; Stallons Video 22:21:00-22:21:30; Eastman Video 22:21:00-22:21:30). Even accepting that Smith heard Johnson say, "I will take care of this right now" before he emerged, Johnson interacted calmly with Smith, making no sudden movements and not exiting the threshold of his motel room for almost fifteen seconds until Smith wrested him out. (Smith Video 22:21:11-22:21:30).

Defendants have failed to establish that a reasonably prudent person in Smith's situation would believe that Johnson had committed, was committing, or was about to commit the offense of obstructing government operations as defined by KRS 519.020.

c.       **Conclusion**

Accordingly, Defendants have failed to establish that Smith had probable cause to arrest Johnson.

3.       *Failure to Intervene*

Johnson claims that Eastman[8] violated his Fourth Amendment rights by failing to intervene in Smith and Stallons use of excessive force.  (Compl. ¶¶ 28-31).  "An officer may be liable for failing to intervene when, '(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'"  *Grinnell v. City of Taylor*, No. 21-2748, 2022 WL 1562291, at *6 (6th Cir. May 18, 2022) (quoting *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008)).  Defendants focus on the second element.  (*See* Defs.' Mem. 17-18).

An officer's proximity to and the total duration of the use of excessive force are relevant considerations to determine whether that officer had the opportunity and means to prevent the harm from occurring.  *See Grinnell*, 2022 WL 1562291, at *6 (citing *Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018)).  "[W]here the 'act of excessive force unfolds in a matter of seconds, the second requirement is generally not satisfied.'"  *Id.* (alteration in original) (quoting *Alexander*, 733 F. App'x at 265).  "[A]n excessive use of force lasting ten seconds or less does not give a defendant enough time to perceive the incident and intervene to stop such force."  *Id.* (quoting *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 493 (6th Cir. 2020)).  By contrast, the Sixth Circuit affirmed a denial of summary judgment involving a failure to protect claim where the use

---

[8] Defendants also move for summary judgment to the extent Johnson is alleging a theory of failure to intervene against Stallons.  (Defs.' Mem. 17).  In his response, Johnson does not argue that Stallons is liable under a theory of failure to intervene.  (*See* Pl.'s Resp. 17-18).  Accordingly, opposition to Defendants' motion is deemed waived as to this theory with respect to Stallons and summary judgment is granted to that extent.  *See Scott*, 1989 WL 72470, at *2.

of force lasted twenty-one seconds. *Goodwin v. City of Painesville*, 781 F.3d 314, 328-30 (6th Cir. 2015).

Here, about eight seconds passed between the moment Smith first grabbed Johnson's arm and when Johnson ended up on the ground. (Smith Video 22:21:27-22:21:35). Stallons had his knee on Johnson's back for roughly twenty seconds. (Smith Video 22:21:41-22:22:00). Eastman was moving towards Johnson's motel room when Smith first grabbed Johnson. (Eastman Video 22:21:30-22:21:35). Eastman walked past the encounter and into the room to attempt to calm the other occupants. (Eastman Video 22:21:30-22:21:40; *see* Smith Video 22:21:28-22:21:30). When Eastman exited the motel room, he stood near the door to the motel room and spoke with Smith and Stallons as they placed handcuffs on Johnson, who was on the ground with Stallons' knee in his back. (Eastman Video 22:21:52-22:22:04; Smith Video 22:21:30-22:22:00).

Johnson was subject to the alleged excessive force for nearly thirty seconds. Based on the body camera videos, a reasonable jury could find that Eastman was aware of the excessive force from its genesis because he walked past Smith and Stallons as they grabbed Johnson. (Smith Video 22:21:27-22:22:00). Eastman was within a few feet of the encounter. (Eastman Video 22:21:30-22:22:04). A reasonable juror could find that the duration and proximity of the encounter gave Eastman the opportunity and means to "both perceive what was going on and intercede to stop it." *Pelton v. Purdue*, 731 F. App'x 418, 426 (6th Cir. 2018) (quoting *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013)); *see also Parnell v. City of Detroit*, 786 F. App'x 43, 52 (6th Cir. 2019) ("A reasonable officer, as close as Patterson was, could have and should have intervened."). Accordingly, Defendants have failed to establish that they are entitled to judgment as a matter of law on Johnson's Fourth Amendment claim against Eastman.

B.      **State Law Claims**[9]

1.      *Assault*

Defendants seek summary judgment on Johnson's assault claim against Smith and Stallons.

(Defs.' Mem. 22).

Under Kentucky law, "[a]ssault is a tort which merely requires the threat of unwanted

touching of the victim . . . ." *Andrew v. Begley*, 203 S.W.3d 165, 171 (Ky. App. 2006) (quoting

*Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. App. 2001)).

Defendants argue that Smith and Stallons use of force was privileged under KRS 503.090.

(Defs.' Mem. 22-23).   KRS 503.090 states, in relevant part:

> (1)     The use of physical force by a defendant upon another person is justifiable
> when the defendant, acting under official authority, is making or assisting in
> making an arrest, and he:
>> (a)     Believes that such force is necessary to effect the arrest;
>> (b)     Makes known the purpose of the arrest or believes that it is
>> otherwise known or cannot reasonably be made known to the person to be
>> arrested; and
>> (c)     Believes the arrest to be lawful.

KRS 503.090(1).   Courts discussing this statute have understood it allow an officer "making an

arrest [to] use such force as may be necessary to make the arrest, but no more."  *Gambrel v. Knox*

*Cnty.*, No. 17-184-DLB, 2018 WL 1457296, at *12 (E.D. Ky. Mar. 23, 2018) (citations omitted);

*Hanna v. Boyd Cnty. Det. Ctr.*, No. 20-136-DLB, 2023 WL 2309760, at *4 (E.D. Ky. Mar. 1,

2023) ("Kentucky law permits officers to use reasonably necessary force to make an arrest."

(citing KRS 503.090)).  In other words, KRS 503.090 is only applicable if the officers use of force

was not excessive.  *See Browning v. Edmonson Cnty.*, 18 F.4th 516, 531 (6th Cir. 2021)

("[A]lthough KRS § 503.090(1) permits the use of force in making an arrest, Kentucky courts have

---

[9] Johnson does not bring any state law claims against Eastman.  (Compl. ¶¶ 28-31).

held that the statute permits only 'less than excessive force.'" (quoting *Brown v. Fournier*, No. 2015-CA-001429-MR, 2017 WL 2391709, at *4 (Ky. App. June 2, 2017)).

Defendants argue that Smith and Stallons believed the arrest was lawful for the same reasons stated in support of their motion with respect to Johnson's federal claims. (Defs.' Mem. 23). As explained above, there is at least a genuine issue of material fact as to whether Smith and Stallons used excessive force. Accordingly, Defendants' motion is denied as to Johnson's claim for assault. *Cf. Gambrel*, 2018 WL 1457296, at *12 (denying judgment on the pleadings on the plaintiff's claim for assault and battery where the defendants' argument tracked their argument for dismissal of the plaintiff's Fourth Amendment excessive force claim).

### 2. *Malicious Prosecution*

Defendants seek summary judgment on Johnson's malicious prosecution claim against Smith.[10] (Defs.' Mem. 23-25). To establish a claim of malicious prosecution under Kentucky law, Johnson must prove that:

> 1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff; 2) the defendant acted without probable cause; 3) the defendant acted with malice, which in the criminal context, means seeking to achieve a purpose other than brin[g]ing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based; 4) the proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought; and 5) the plaintiff suffered damages as a result of the proceeding.

---

[10] Johnson also addresses Stallons' conduct in responding to Defendants' argument for dismissal of the malicious prosecution claim. (Pl.'s Resp. 21). The Complaint does not contain a claim for malicious prosecution against Stallons. (*See* Compl. ¶¶ 21-27). Accordingly, a claim for malicious prosecution against Stallons is not before the Court. *See, e.g.*, *Collins v. Berryhill*, No. 7:17-94-DCR, 2017 WL 5501496, at *2 (E.D. Ky. Nov. 16, 2017) ("Because Collins' constitutional claims are contained in a response to a motion, and not in his Complaint, they are not properly before this Court.").

*Leath v. Webb*, 323 F. Supp. 3d 882, 896-97 (E.D. Ky. 2018) (quoting *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016)).  Defendants argue that Johnson's claim fails on the third element.[11] (Defs.' Mem. 23-25).

Malice is defined as "the intentional doing of a wrongful act to the injury of another, with an evil or unlawful motive or purpose." *Estep*, 467 F. Supp. at 500 (quoting *Stearns Coal Co. v. Johnson*, 37 S.W.2d 38, 40 (Ky. 1931)).  Malice is a question of fact and may be inferred by the absence of probable cause.[12] *Estep v. Combs*, 366 F. Supp. 3d 863, 884 (E.D. Ky. 2018) (quoting *Phat's Bar & Grill v. Louisville Jefferson Cnty. Metro Gov't*, 918 F. Supp. 2d 654, 665 (W.D. Ky. 2013)); *see McIlwain v. Dodd*, No. 3:21-cv-406-RGJ, 2022 WL 492986, at *9 (W.D. Ky. Feb. 17, 2022) (citing *Mosier*, 106 S.W.2d at 642).

The Court has already found that Defendants have failed to establish as a matter of law that Smith had probable cause to arrest Johnson.  Therefore, if it is established at trial that Smith lacked probable cause, a jury could infer that Smith acted with malice.  Further, independent of such an inference, a reasonable jury viewing the body camera footage could find that Smith acted with malice when he seized Johnson.

### 3.    *Qualified Official Immunity*

Under Kentucky law, "an official sued in his or her individual capacity enjoy[s] only qualified official immunity, which affords protection . . . for good faith judgment calls made in a legally uncertain environment." *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006) (alteration

---

[11] Defendants initially argued the fourth element as well but conceded this element in their reply. (Defs.' Mem. 23-25; Defs.' Reply 8).

[12] This is not always the case, and a jury may not imply malice from want of probable cause alone. *Estep*, 467 F. Supp. 3d at 500 (quoting *Mosier v. McFarland*, 106 S.W.2d 641, 642 (Ky. 1937)). For example, this would apply where the individual prosecuted is actually guilty of the crime charged despite an initial lack of probable cause or favorable termination of criminal proceedings. *See Mosier*, 106 S.W.2d at 642-43.

in original) (internal quotation marks omitted) (quoting *Jefferson Cnty. Fiscal Ct. v. Peerce*, 132 S.W.3d 824, 833 (Ky. 2004)).  As recognized by the Kentucky Supreme Court in *Estate of Clark ex rel. Mitchell v. Daviess County*, 105 S.W.3d 841 (Ky. 2003):

> Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or function, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employees [sic] authority.  An act is not necessarily discretionary just because the officer performing it has some discretion with respect to the means or method to be employed.  Qualified official immunity is an affirmative defense that must be specifically pled.

> Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, i.e.[,] one that requires only obedience to the orders of others, or when the officers [sic] duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts.  That a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in nature.

*Id*. at 845 (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)).

Having found that Defendants have failed to establish qualified immunity with respect to Johnson's constitutional claims, "factual questions exist as to whether [Smith and Stallons] [] acted in good faith."  *Hill v. Adkins*, 59 F. Supp. 3d 814, 820 (E.D. Ky. 2014) (denying qualified official immunity where genuine issues of fact existed as to whether the defendants used excessive force).

### 4.   *Medical Expenses*

Defendants move for summary judgment on Johnson's claims for medical expenses and for pain and suffering because Johnson has not disclosed an expert witness to testify about causation.  (Defs.' Mem. 30-31).

Defendants assert that "Kentucky law usually requires expert or medical testimony to establish that an incident legally caused a medical injury."  (Defs.' Mem. 30 (quoting *Garrison v. Sam's E., Inc.*, No. 1:16-CV-00152-GNS-HBB, 2019 WL 3535991, at *2 (W.D. Ky. Aug. 2, 2019))).  Defendants argue that where a plaintiff has a history of medical treatment or injuries that

are similar to the injuries underlying his claims, expert causation testimony is necessary.  (Defs.' Mem. 30-31).  Johnson concedes Defendants' motion except as to medical expenses incurred in the emergency room immediately following the incident and for pain and suffering that resulted from colliding with the ground during his encounter with Defendants.  (Pl.'s Resp. 23-25). Johnson points out that Kentucky law allows certain claims for pain and suffering to proceed without expert causation testimony where causation is sufficiently obvious.  (Pl.'s Resp. 23 (citing *Garrison*, 2019 WL 3535991, at *3)).  Johnson argues that no expert causation testimony should be necessary to establish a causal connection between the incident with Defendants and his visit to the emergency room on the night of the incident or that he suffered pain and suffering from colliding with the ground.  (Pl.'s Resp. 23-25).

Both parties cite to *Garrison*, which involved a plaintiff who suffered a fall at a grocery store and sued for damages.  *Garrison*, 2019 WL 3535991, at *1.  The defendant moved for summary judgment arguing that the plaintiff lacked expert causation testimony.  *Id.*  This Court granted the motion except as to her claim for pain and suffering, reasoning that "whether the fall could result in pain and suffering is not the sort of question requiring expert testimony.  Jurors do not need a medical degree to find that falling results in pain, so Plaintiff does not need expert testimony on this particular question."  *Id.* at *3 (citation omitted).  This same logic applies here. The causal relationship between a fall and pain is "within the realm of common knowledge." *Roark v. Speedway, LLC*, No. 13-139-ART, 2015 WL 12978822, at *2 (E.D. Ky. Apr. 6, 2015) (quoting *Tatham v. Palmer*, 439 S.W.2d 938, 939 (Ky. 1969)).

Accordingly, summary judgment is denied as to Johnson's claim for pain and suffering and related claim for medical expenses incurred at the emergency room immediately following the fall due to Johnson's alleged pain and suffering.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.     Defendants' Motion for Summary Judgment (DN 40) is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's claims are **DISMISSED** as follows:  (a) the constitutional claims asserted against all Defendants to the extent that the claims are based on the Fifth Amendment; (b) the state law claims for libel and abuse of process against Defendant Brian Smith; and (c) any damages for medical expenses, and pain and suffering except to the extent those damages were incurred as a direct result of Plaintiff's fall.

2.     Plaintiff's Motion for Leave to File Excess Pages (DN 49) is **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

March 27, 2024

cc:     counsel of record